**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

JOHN MILLER,

            Plaintiff,

    v.

TAMMY SUGGS, et al.,

            Defendants.

CIVIL ACTION NO.: 5:17-cv-123

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed a 42 U.S.C. §1983 Complaint, as amended, concerning certain events that occurred during his incarceration at Coffee Correctional Facility in Nicholls, Georgia.  Docs. 1, 39, 40.  Defendant Burse filed a Motion for Summary Judgment, doc. 54, and all other Defendants filed a separate Motion for Summary Judgment, doc. 56.  Plaintiff filed a Response to both Motions, doc. 62, and the Motions are now ripe for review.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment, docs. 54, 56, **DISMISS with prejudice** Plaintiff's Complaint for his failure to establish a genuine dispute of material fact, and **DENY as moot** Plaintiff's claim for injunctive relief.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

**BACKGROUND**[1]

### I.    Plaintiff's Complaint and Amended Complaint

It is helpful at the outset to clear up some confusion regarding Plaintiff's Complaint and Amended Complaint.[2]  Plaintiff signed his initial Complaint on September 10, 2017.  Plaintiff's initial Complaint consisted of two documents: (1) a completed version of the Court's standard form for actions initiated by prisoners under 42 U.S.C. § 1983, doc. 1; and (2) a six-page handwritten attachment, captioned "Complaint," which includes detailed factual allegations and legal claims, doc. 1-1.  The Clerk of Court docketed the completed form as Document Number 1 and the handwritten attachment as Document Number 1-1 (i.e., as an attachment to Document Number 1).  Both documents were signed on September 10, 2017, and the Court considers the two documents together in referring to Plaintiff's initial Complaint.

After the Court conducted frivolity review on Plaintiff's initial Complaint, docs. 8, 12, 16, 32, Plaintiff filed an Amended Complaint.[3]  Like his initial Complaint, Plaintiff's Amended Complaint consists of two documents: (1) a completed version of the Court's standard form, doc. 39; and (2) a handwritten attachment, this time captioned "Complaint Amended to a 'Tort Claim,'" doc. 40.  Again, the handwritten attachment contains detailed factual allegations and

---

[1]    The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

[2]    Defendants Suggs, Hall, K. Davis, L. Davis, Green, and Youngblood expressed uncertainty about the status of Plaintiff's Complaint and Amended Complaint in their Motion for Summary Judgment.  Doc. 56.

[3]    Plaintiff should have sought leave of Court prior to amending his Complaint, as required by Federal Rule of Civil Procedure 15(a)(2).  All Defendants had been served with Plaintiff's Complaint and filed responsive pleadings more than 21 days prior to Plaintiff's filing of his Amended Complaints.  Docs. 33, 36, 38.  Nevertheless, because Plaintiff's original and amended pleadings are virtually identical, no party objected to Plaintiff's amendment, and leave to amend should be freely granted, the Court considers Plaintiff's Amended Complaint proper and timely.

legal claims.  Both documents were signed on June 18, 2018.  Unlike Plaintiff's initial

Complaint, however, the Clerk of Court docketed Plaintiff's completed form as one document,

coded as "Amended Complaint," doc. 39, and the handwritten attachment as a separate,

subsequent document, coded as "Second Amended Complaint," doc. 40.

In light of these circumstances, the Court understands that Plaintiff intended to file one

"Amended" Complaint when he filed the two documents dated June 18, 2018, docs. 39, 40, and

the Court will construe these two documents together to be one pleading.[4]  Therefore, when

referring to Plaintiff's "Amended Complaint" in this Report and Recommendation, the Court

refers to both Document Numbers 39 and 40.  Additionally, Plaintiff's Amended Complaint

supersedes his original Complaint, and the Court, therefore, deems the Amended Complaint the

operative pleading.  See Fritz v. Standard Sec. Life Ins. Co. of New York, 676 F.2d 1356, 1358

(11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original

complaint.").  This is consistent with the Court's observation that Plaintiff's Amended Complaint

is largely identical to Plaintiff's original Complaint and contains the same allegations against the

same Defendants, aside from a few minor differences, which are described below in detail.

## II.     Plaintiff's Factual Allegations

On July 16, 2015, Defendants Kevin Davis ("K. Davis"), Jamonte Green, Anthony

Youngblood, and Willie Cook entered Plaintiff's cell block for a routine contraband search.

Doc. 40 at 3.  Defendants then sent all inmates into the prison yard, and Plaintiff notified

Defendants that he had a "serious medical condition."  Id.  Plaintiff then alleged he was told, "I

---

[4]      Defendants Suggs, Hall, K. Davis, L. Davis, Green, and Youngblood suggest in their Motion for
Summary Judgment that Plaintiff may have only intended to name Defendant Sugg in his Amended
Complaint, because Suggs is the only Defendant discussed in the completed form.  Doc. 56 at 5
(discussing Doc. 39 at 1).  The Court disagrees with this reading of Plaintiff's filings.  Rather, Plaintiff
intended to and did name all Defendants (Suggs, Hall, K. Davis, Cook, Green, Youngblood, L. Davis, and
Burse) by identifying those Defendants in his handwritten attachment.  Doc. 40.

don't care about your medical problems, (conditions) and get your ass out in the yard." Id. Plaintiff does not state whether he was forced to go outside on July 16, 2015, but Plaintiff's allegations suggest he complied with the officers' directions and went into the yard that day.

Five days later, on July 21, 2015 Defendants K. Davis, Green, Youngblood, and Cook entered Plaintiff's cell block again to conduct another contraband search. Id. at 3–4. Plaintiff again told Defendants that he could not go into the prison yard because of his medical problems, but Defendants sent him into the yard anyway. Id. Plaintiff alleged it was 109 degrees "in direct sun light[,]" and as a result, he passed out while speaking with two other inmates. Id. Plaintiff further claims that all of the inmates in the prison yard attempted to gain the guards' attention so that Plaintiff could receive medical treatment. Id. at 4. According to Plaintiff, when Nurse Harper arrived and saw Plaintiff incapacitated, she had to tell Defendants multiple times to call medical services for Plaintiff. Id. Plaintiff awoke in the medical department, where he had been given an IV. Id. Plaintiff returned to his cell later that evening. Id. Plaintiff claims that, when he attempted to file a grievance related to this incident, Defendant Suggs spoke to her superiors and arranged that Plaintiff be transferred to a different facility in retaliation for his grievance. Doc. 39 at 5.

Plaintiff names Hilton Hall, Lynn Davis ("L. Davis"), Tammy Suggs, and William Burse as Defendants. Doc. 40 at 1. Defendant Hall is identified as the warden of Coffee Correctional Facility. Id. Defendants L. Davis and Suggs are identified as the grievance coordinator and a counselor, respectively. Id. Defendant Burse is identified as the individual responsible for inmate grievance appeals within the Georgia Department of Corrections. Id. Plaintiff states Defendant Hall is liable for failing to correct the "illegal actions" of the other Defendants. Id.

4

Plaintiff did not make any specific allegations against Defendants L. Davis, Suggs, and Burse. Id. at 4–5.

Plaintiff also names K. Davis, Green, Youngblood, and Cook as Defendants. Id. at 2.  K. Davis is identified as "supervisor (Unit Manager) of Coffee Correctional Facility," while Green, Youngblood, and Cook are identified as correctional officers.  Id.  Plaintiff alleges Defendant K. Davis violated his Eight Amendment rights because he falsely stated he ran a medical check on all inmates before sending them out to the prison yard.  Id. at 5.  Plaintiff alleges Defendants Green, Youngblood, and Cook were deliberately indifferent to his safety by sending him out into the prison yard despite his medical condition.  Id.  Plaintiff further states that all Defendants threatened him with "physical violence and transfer to a much worse prison[.]"  Id. at 6.  Plaintiff requests compensatory and punitive damages as well as declaratory and injunctive relief.  Id.

On March 22, 2018, the Magistrate Judge issued a Report regarding the requisite frivolity review of Plaintiff's initial Complaint.  Doc. 16.  In that Report, the Magistrate Judge recommended the Court dismiss Plaintiff's monetary damage claims against Defendants in their official capacities as barred by Eleventh Amendment immunity.[5]  Id.  The Magistrate Judge also directed service on all Defendants, finding that Plaintiff stated non-frivolous claims for deliberate indifference to medical needs against Defendants Cook, Youngblood, Green, and K. Davis and for retaliation against all Defendants.  Id.  Plaintiff filed an objection, doc. 18, arguing that only Defendant Burse was an employee of the Georgia Department of Corrections and that all other Defendants were employees of Core Civic, a private company operating Coffee Correctional Facility.  On that basis, Plaintiff asserted that only Defendant Burse was entitled to Eleventh Amendment immunity from official capacity damages.  Doc. 18.  On May 11, 2018, the

---

[5]    The Magistrate Judge recommended, and the Court ordered, that Plaintiff's motion for a preliminary injunction, filed concurrent with his initial Complaint, be denied.  Docs. 8, 12.

Court adopted in part and rejected in part the Report and Recommendation.  Doc. 32.  The Court dismissed Plaintiff's monetary damages claims against Defendant Burse in his official capacity but allowed the remainder of Plaintiff's claims to proceed.  Id.

On July 13, 2018, Plaintiff filed his Amended Complaint.  Docs. 39, 40.  As noted above, Plaintiff's Amended Complaint is almost identical to his initial Complaint, aside from the following distinctions.  In his Amended Complaint, Plaintiff noted that had been transferred to Calhoun State Prison from Coffee Correctional Facility after filing his original Complaint and alleged that this transfer was retaliation for initiating this suit.  Doc. 39 at 3.  In his Amended Complaint, when asked "[d]id you appeal any adverse decision to the highest level possible in the administrative procedure?" Plaintiff marked "Yes," whereas in his original Complaint, he marked "No."  Doc. 1 at 4; Doc. 39 at 4.  However, his explanation following each of those answers was the same.  In his Amended Complaint, Plaintiff added a sentence under the "Jurisdiction & Venue" heading reading, "Plaintiff Miller is Amending this his Complaint to a 'TORT CLAIM.'"  Doc. 40 at 1.  Plaintiff also made brief additions to his allegations against Defendants Hall, the Warden of Coffee Correctional Facility, and Defendant Burse, who handles inmate grievance appeals for the Georgia Department of Corrections.  Specifically, Plaintiff alleged these two Defendants failed to investigate his allegations, grievance claims, and appeals. Id. at 2, 4.  In his Amended Complaint, Plaintiff also clarified he was pursuing official-capacity claims against all Defendants except Defendant Burse, which is consistent with the Court's ruling regarding Defendant Burse's Eleventh Amendment immunity.  Id. at 1; Doc. 32. Additionally, Plaintiff alleges in his Amended Complaint that Defendants Cook, Green, and Youngblood continued to force him to endure extreme heat in the yard until he was transferred to Calhoun State Prison on September 19, 2017.  Doc. 40 at 5.  Defendant further alleges in his

Amended Complaint that Defendant Suggs racially discriminated against him when she refused to make copies of his court papers.  Id. at 4.  Aside from these distinctions, Plaintiff's Amended Complaint is identical to his initial Complaint in all material respects.[6]

Defendant Burse filed a Motion for Summary Judgment on November 19, 2018, and all other Defendants filed their Motion for Summary Judgment one day later.  Docs. 54, 56.[7] Defendant Burse moves for summary judgment on multiple grounds, including Plaintiff's failure to exhaust his administrative remedies and Plaintiff's failure to put forward any dispute of material fact as to his retaliation claim.  Doc. 54.  The other Defendants move for summary judgment on multiple grounds, including statute of limitations and Plaintiff's failure to put forward any dispute of material fact as to Plaintiff's claims of retaliation and deliberate indifference.  Doc. 56.

Plaintiff failed to file a response within the time allotted, and the Court entered an Order directing Plaintiff to file a response by February 14, 2019.  Doc. 61.  Plaintiff filed a Response in opposition to Defendants' Motions on March 1, 2019.  Doc. 62.  This response is two pages long, not including the title of the filing or the certificate of service.  It contains no relevant argument, points to no facts or evidence, does not cite to the record, and contains only one citation to legal authority.  Indeed, Plaintiff does not respond to any of Defendants' arguments.  The only portion of this Response arguably relevant to Defendants' Motions is a single sentence where Plaintiff

---

[6]    In his Amended Complaint, Plaintiff refers to a fellow inmate's statement, a grievance response, and an offender schedule as Exhibits A, B, and C, respectively.  Doc. 40 at 4–5.  However, no exhibits or additional documents were filed with Plaintiff's Amended Complaint.

[7]    Defendant Cook is named in the title of Defendants' Motion for Summary Judgment, though summary judgment is not requested on his behalf in the body of that Motion.  Doc. 56 at 1, 18.  Because Defendant Cook is named in the title of the Motion and has always jointly filed with Defendants Suggs, Hall, Green, K. Davis, Green, Youngblood, and L. Davis, the Court presumes that this is an oversight and the Court will treat this Motion for Summary Judgment as filed on Defendant Cook's behalf along with the other Defendants.

reiterates his belief "that the defendants [were] responsible for his injury[,]" and states his opposition to Defendants' Motions for Summary Judgment.  Id. at 2.

## DISCUSSION

Plaintiff has filed an Amended Complaint, docs. 39, 40, and the Court has not conducted a frivolity review of that document.  Defendants move for summary judgment.  Docs. 54, 56. Rather than conduct a frivolity review of Plaintiff's Amended Complaint, the Court rules on Defendants' Motions for Summary Judgment as applicable to Plaintiff's Amended Complaint. As set forth below, I find that Plaintiff has failed to set forth a genuine dispute of material fact as to his retaliation and deliberate indifference claims and that any failure to investigate Plaintiff's grievances is not actionable under §1983.  I, therefore, **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment and **DISMISS with prejudice** Plaintiff's Complaint, as amended.

## I.     Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  See Williamson Oil Co.

v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## II.   Defendant Burse's Motion for Summary Judgment, Doc. 54

Defendant Burse is an employee of the Georgia Department of Corrections and handles Central Office Appeals for state prisoners.  Doc. 54-1 at 1.  Plaintiff alleges Defendant Burse failed to investigate grievances Plaintiff filed concerning being sent to the yard by other Defendants or question witnesses connected to those events.  Doc. 40 at 3.  It is unclear whether Defendant Burse did, in fact, deny Plaintiff's grievance, but Plaintiff alleges that "Burse is the end of the administrative remedies[.]"  Id.  Defendant Burse is not involved with inmate transfers.  Doc. 54-1 at 4.  Given these facts, Plaintiff at most alleges that Defendant Burse failed to investigate grievances that he had filed.  Plaintiff does not allege Defendant Burse was connected to any of the allegations giving rise to his deliberate indifference claim, and because

Burse plays no role in inmate transfers, Plaintiff cannot allege a plausible retaliation claim against Burse based on Plaintiff's transfer to a different prison.

Plaintiff's claim for failure to investigate fails for several other reasons, too.  First, there is no constitutionally protected liberty interest in a grievance process, including the investigation of grievances.  The Eleventh Circuit Court of Appeals has joined other Circuits in holding "that a prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure."  Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").  "Simply put, a prison official's failure to timely process a grievance form, investigate it, or otherwise respond to a grievance is not actionable under § 1983."  Wromas v. Cruz, Case No. 2:17-cv-155, 2018 WL 2318038, at *2 (M.D. Fla. May 22, 2018).  Because Plaintiff has no constitutionally protected interest in having his grievances investigated, he cannot bring a claim under § 1983 based upon Defendant Burse's alleged failure to investigate any grievance that he filed.

Second, even if Plaintiff's claim for failure to investigate were actionable under § 1983, Defendant Burse would still be entitled to summary judgment on other grounds.  Defendant Burse argues that Plaintiff is limited to nominal damages under the Prison Litigation Reform Act ("PLRA"), that Plaintiff has failed to exhaust his administrative remedies, and that Defendant Burse is entitled to qualified immunity.  Doc. 54 at 4–6, 8–14.  Plaintiff has made no response to these arguments.  Doc. 62.  The PLRA prohibits prisoners from seeking compensatory or punitive damages where they have not suffered a physical injury.  42 U.S.C. § 1997e(e); see Al-Amin v. Smith, 637 F.3d 1192, 1197–98 (11th Cir. 2011).  There is no evidence that Plaintiff suffered any physical injury connected to his allegations against Defendant Burse, and

accordingly, any relief he could obtain would be limited to nominal damages.  Additionally, before filing suit against Defendant Burse, Plaintiff was required to exhaust his available administrative remedies.  42 U.S.C. § 1997e(a).  Defendant Burse, in his sworn declaration, states that he searched the inmate grievance database and found no grievance by Plaintiff directed against him.  Doc. 54-1 at 3.  Plaintiff has produced no evidence to counter this argument, and his claim is due to be dismissed for failure to exhaust administrative remedies. Finally, Defendant Burse was performing a discretionary function when investigating inmate grievances and is entitled to qualified immunity unless Plaintiff can show that his conduct violates clearly established law.  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  Plaintiff has not made a meaningful response to Defendant Burse's arguments and has not pointed to any authority indicating Defendant Burse's actions violated clearly established law.  Defendant Burse is, therefore, entitled to summary judgment on grounds of qualified immunity, as well.

Plaintiff's allegations against Defendant Burse are not actionable, Plaintiff has failed to exhaust his administrative remedies, and Defendant Burse is entitled to qualified immunity. Accordingly, I **RECOMMEND** the Court **GRANT** Defendant Burse's Motion for Summary Judgment.  Doc. 54

**IV.   Remaining Defendants' Motion for Summary Judgment, Doc. 56**

Plaintiff's Amended Complaint arguably states three claims against the remaining Defendants to this action.  Plaintiff alleges Defendants K. Davis, Cook, Green, and Youngblood continually forced him to endure extreme heat resulting in him collapsing due to a medical condition he had made known to Defendants.  Doc. 40 at 5.  Plaintiff also alleges that Defendant Hall "encourage[d] the continuation of [this] misconduct[.]"  Id. at 6.  Plaintiff alleges these actions constituted deliberate indifference to his safety.  Id. at 5–6.  Plaintiff next alleges that "all

defendants" threatened him with "physical violence and transfer to a much worse prison" for his use of the prison grievance system.  Id. at 6.  These allegations arguably state a claim for retaliation against Defendants Suggs, Hall, K. Davis, Cook, Green, Youngblood, and L. Davis.  Plaintiff finally alleges that Defendants Suggs and Hall failed to investigate grievances that he had filed.[8]  Doc. 39 at 5; Doc. 40 at 2.  Plaintiff arguably attempts to state a claim for failure to investigate based on these allegations, as well.

## A.     Deliberate Indifference

Plaintiff has failed to establish any dispute of material fact on his deliberate indifference claim or indeed make any meaningful response to Defendants' Motion for Summary Judgment.  The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  In order to prevail on a deliberate indifference claim under the Eighth Amendment, a prisoner must show three elements: (1) an objectively serious medical need; (2) a defendant's subjective, deliberate indifference to that need; and (3) an injury caused by the defendant's indifference.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

As to the first element, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).  In either

---

[8]      Plaintiff also alleges that Defendant Suggs refused to make copies for him but made copies for a black inmates ten minutes later and that "this was a very racial thing[.]"  Doc. 40 at 4.  Plaintiff does not mention racial discrimination at any other point in his Amended Complaint.  Plaintiff does not provide any details about this interaction or whether he suffered any harm.  This passing remark is not sufficient to state a claim.

situation, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1246 (quoting Farmer, 511 U.S. at 834).  The second element requires that "a defendant know of and disregard an excessive risk to an inmate's health and safety."  Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  In particular, Plaintiff "must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.  Summary judgment will be granted in favor of a defendant unless the plaintiff presents evidence of each of these elements."  Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (internal citations omitted).

As to the first element, Plaintiff alleges in his Amended Complaint that he had an objectively serious medical condition that prevented him from going into the sun.  Doc. 40 at 3–4.  However, Defendants note correctly that Plaintiff "has not pled he had . . . a medical profile" that would have shown that he had a diagnosis that would prevent him from going into the sun.  Doc. 56 at 15.  Plaintiff additionally did not plead that his medical condition was "so obvious that even a lay person" would recognize it.  Bingham, 654 F.3d at 1176.  More importantly, Plaintiff has not produced any evidence indicating that he actually does suffer from any condition that would prevent him from enduring high temperatures.  Plaintiff has not even identified what condition he supposedly suffers from that should have caused Defendants to refrain from sending him into the prison yard.  Accordingly, Plaintiff has not put any evidence before the Court from which the finder of fact could infer that he had an objectively serious medical condition.

Even assuming Plaintiff presented a genuine issue of material fact as to whether he had an objectively serious medical need, Plaintiff has not put forward sufficient evidence to establish a genuine issue of material fact as to whether Defendants responded to his need with deliberate

indifference.  Plaintiff alleges he told Defendants K. Davis, Green, Cook, and Youngblood of his serious medical condition, but that they nevertheless sent him out into the prison yard.  Id.  But this allegation is insufficient to survive summary judgment.

Defendants K. Davis, Green, Cook, and Youngblood all submitted sworn declarations stating that they do not recall Plaintiff telling them he had a medical condition, and that if he had made such a statement, standard practice would have been to verify his condition with medical and then make any necessary adjustments.  Doc. 56-1 at 4–6, 8, 11.  Plaintiff has not submitted any sworn statements, discovery responses, or any other evidence that would contradict the statements presented by Defendant.  Plaintiff simply rests on his pleadings.  This is insufficient to oppose a summary judgment motion.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").  The Court forewarned Plaintiff "[s]hould Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint."  Doc. 16 at 13.  Because Plaintiff has not produced any affidavits or other documents in opposition to Defendants' sworn statements, the Court accepts as true Defendants' sworn declarations that they were not aware of Plaintiff's purported serious medical condition.

Plaintiff's deliberate indifference claim is also barred by statute of limitations.  "The statute of limitations for § 1983 claims arising in Georgia is two years."  Rehberger v. Henry County, 577 F. App'x 937, 938 (11th Cir. 2014) (holding that an access to courts claim was barred when all the conduct plaintiff complained of occurred "well outside the two-year

14

limitation period.").  Under federal law, "the statute of limitations begins to run from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard to his rights."  <u>Brown v. Ga. Bd. of Pardons & Paroles</u>, 335 F.3d 1259, 1261 (11th Cir. 2003) (internal quotations omitted).  Plaintiff filed two grievances connected to his deliberate indifference claim.  He filed the first on July 20, 2015 and filed the second on July 23, 2015.  Doc. 40 at 5.  He exhausted both of those grievances on September 3, 2015.  <u>Id.</u> Plaintiff signed his Complaint on September 10, 2017, and it was received by the Court on September 15, 2017.  Plaintiff's claims against Defendants K. Davis, Cook, Youngblood, Green, and Hall for deliberate indifference are, therefore, barred by Georgia's two-year statute of limitations.[9]

Because Plaintiff fails to point to any material in the record from which a finder of fact could determine that he had an objectively serious medical need or that Defendants were deliberately indifferent to that need, and because the claim is barred by the statute of limitations, I **RECOMMEND** the Court **GRANT** the Coffee Correctional Facility Defendants' Motion for Summary Judgment, doc. 56, as to Plaintiff's deliberate indifference claim.

### B.    Retaliation

Plaintiff alleges that "all defendants" threatened him with physical violence and "transfer to a much worse prison" in retaliation of his filing of grievances and did in fact transfer him to a

---

[9]      In his Amended Complaint, Plaintiff suggests that Defendants continued to force him into the yard in extreme heat, despite his medical condition, up until his transfer on September 19, 2017.  Doc. 40 at 5.  Defendants argue that this allegation is a specious attempt to avoid the statute of limitations.  Doc. 56 at 9–10.  Regardless of Plaintiff's intent, Defendants have challenged the allegation, arguing that there is no evidence of any deliberate indifference, better yet conduct that continued up through September 19, 2017.  <u>Id.</u>  Defendants support this challenge with their own sworn declarations.  <u>Id.</u>  Plaintiff has not responded the Defendants' arguments and declarations.  Therefore, Plaintiff has not established that there is any genuine issue of material fact concerning the applicability of the statute of limitations here.

different facility in retaliation for those grievances.  Doc. 40 at 5–6.[10]  It is well settled that "[p]rison officials may not retaliate against inmates for filing lawsuits or administrative grievances."  Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008).  Such retaliation implicates both an inmate's right of access to courts and an inmate's First Amendment freedom of speech.  Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989).  Retaliation, in and of itself, is a constitutional violation.  Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  Therefore, though prisoners have no free-standing right to remain at a particular facility, prison officials violate an inmate's constitutional rights when they order an inmate transferred in retaliation for the inmate's speech.  Bridges v. Russell, 757 F.2d 1155, 1156 (11th Cir. 1985).

To prevail on a retaliation claim, a plaintiff must prove three elements: (1) his speech was constitutionally protected; (2) the defendants' retaliation adversely affected the protected speech; and (3) a causal connection between the retaliation and the adverse effect on the speech.  Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).  Defendants are entitled to summary judgment on this claim for two reasons.

First, the record reflects that none of the Defendants has any involvement with the transfer of inmates among different correctional facilities, and, therefore, none of the Defendants could have directed a prisoner transfer in retaliation for an inmate grievance.  Doc. 56-1 at 14.  The record shows that housing assignments are changed by the Georgia Department of Corrections.  Id.  Defendants—except for Defendant Burse, who was discussed above—are not employees of the Georgia Department of Corrections, and accordingly, had no role in determining prisoner transfers.  Id. at 12 ("[T]ransfers and assignments are determined solely by

---

[10]      Plaintiff states Defendants threatened him with retaliation for his "use of the prison grievance system[.]"  Doc. 40 at 6.  Plaintiff does not suggest that he was threatened with retaliation for filing this lawsuit, and in any event, such a claim would not be properly heard in federal court until Plaintiff exhausted his administrative remedies on that claim.  42 U.S.C. § 1997e(a)

the Georgia Department of Corrections and not by anybody at [Coffee Correctional Facility].”). Based on these facts, a reasonable juror could not conclude that Defendants retaliated against Plaintiff by transferring him to a different prison because no Defendant had authority to effectuate such a transfer.  Jordan v. McCloud, Case No. CV603-141, 2006 WL 1805847, at *4 (S.D. Ga. June 29, 2006) (granting motion for summary judgment on retaliatory transfer claim where plaintiff presented no evidence that defendants had any authority to order plaintiff’s transfer).

Second, even if Defendants had sufficient authority to order Plaintiff’s transfer, Defendants are still entitled to summary judgment because Plaintiff has presented no evidence beyond his pleadings that any Defendant did in fact retaliate against him for his complaints in any way.  Defendants Cook, Youngblood, K. Davis, Green, Hall, and Suggs provided sworn declarations stating that they did not retaliate against Plaintiff by threatening him with violence or seeking his transfer.  Doc. 56-1 at 4, 6, 8–9, 11–14.  Plaintiff has not produced any evidence to contradict these declarations.  As stated above, Plaintiff cannot rest on his pleadings for purposes of summary judgment.  Accordingly, the undisputed facts are that Defendants did not retaliate against Plaintiff when he filed his grievances, and Defendants are entitled to summary judgment on that claim.

Additionally, Plaintiff requests an injunction “ordering defendants to cease their physical violence and threats toward Plaintiff Miller, and threats of following Plaintiff to any other prison[.]”  Doc. 40 at 1.  Plaintiff notes in his Amended Complaint that he has been transferred to Calhoun State Prison.  Doc. 39 at 2.  Defendants are employees of Coffee Correctional Facility.

Doc. 40 at 2, 3.[11]  Plaintiff is no longer housed at the facility employing Defendants and is not, therefore, subject to their control.  An issue is moot if it "no longer presents a live controversy with respect to which the court can give meaningful relief."  Christian Coalition of Fla. Inc., v. United States, 662 F.3d 1182, 1189 (11th Cir. 2011) (quotations omitted).  Because Plaintiff is no longer incarcerated at a facility employing Defendants, his claim for injunctive relief should be dismissed.  Cotterall v. Paul, 755. F.2d 777, 780 (11th Cir. 1985) (finding a prisoner plaintiff's claim for injunctive relief "was moot and properly dismissed[,]" where the plaintiff was no longer housed at a jail where defendants allegedly violated his constitutional rights).

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** the Coffee County Correctional Facility Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim and **DENY as moot** Plaintiff's claim for injunctive relief.

### C.    Failure to Investigate Grievances

Plaintiff alleges that Defendant Hall was responsible for investigating all grievances filed at the prison and that he failed to investigate the grievances Plaintiff filed related to this case. Doc. 40 at 2.  Plaintiff's allegations against Defendant Suggs are less clear, but Plaintiff arguably alleges she failed to properly process and investigate his grievances.  Doc. 39 at 5.  As noted above, inmates have no constitutional interest in grievance procedures or investigations. Wromas, 2018 WL 2318038, at *2.  Accordingly, Plaintiff's claim against Defendants Hall and Burse based upon their failure to investigate his grievances fails.  Furthermore, to the extent Plaintiff attempts to base any claim against Defendant Hall based only on his supervisory position, that claim fails.  A supervisor may be liable only through personal participation in the

---

[11]    As noted above, Defendant Burse is an employee of the Georgia Department of Corrections. Defendant Burse is responsible for Central Office Appeals for state prisoners, does not exercise any direct authority over Plaintiff, and does not work at any state prison.  Doc. 54-1 at 1–4.

alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations.  <u>Brady v. Fla. Dep't of Labor & Emp't Sec.</u>, 133 F.2d 797, 802 (11th Cir. 1998).

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

<u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011).  Plaintiff cannot state a claim against Defendant Hall under a theory of respondeat superior.  Liability under § 1983 must be based on more than a defendant's supervisory position.  <u>Bryant v. Jones</u>, 575 F.3d 1281, 1299 (11th Cir. 2009).

Because a failure to investigate grievances is not actionable under § 1983 and Plaintiff cannot sustain any action against Defendant Hall based upon his supervisory position, I **RECOMMEND** the Court **GRANT** the Coffee County Correctional Facility Defendants' Motion for Summary Judgment on Plaintiff's failure to investigate claims.

## V.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[12]  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this

---

[12]    A certificate of appealability is not required in this § 1983 action.

context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's filings and Defendants' Motions for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

### CONCLUSION

For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment, docs. 54, 56, **DISMISS with prejudice** Plaintiff's Complaint for his failure to establish a genuine dispute of material fact, and **DENY as moot** Plaintiff's claim for injunctive relief.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  <u>See</u> 28

U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  A copy of the objections must be

served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of August,

2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA